IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-220-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DEREK JAMES SWINGLE,

    Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR VARIANT SENTENCE**

---

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following sentencing statement with respect to defendant DEREK JAMES SWINGLE. For the reasons described below, the Government respectfully requests that the Court deny the defendant's motion for a downward variance to a probationary sentence and instead sentence the defendant to 30 months' imprisonment, which is a sentence at the bottom of the defendant's Guidelines range.

## Facts

The facts in this case are amply outlined in the parties' plea agreement [ECF #51] and the presentence investigation report ("PSR") [ECF #62] and so will be repeated only in brief here.

In short, on July 2, 2022, in the Routt National Forest, at the gathering of the Rainbow Family of Living Light (the "Rainbow Gathering"), the defendant and his co-

defendant were in a vehicle (the "Vehicle") smoking marijuana, which is prohibited on National Forest land.  The Vehicle was searched and officers located a pill bottle containing what officers at first believed was powder fentanyl, but turned out to be 8.98 grams of heroin.  The bottle was labelled with a prescription for the defendant, but co-defendant Tory Smart took responsibility for the drugs, and admitted that he possessed the heroin with the intent to distribute it.  Officers also located a bag labelled as containing 500 empty pill capsules that had about 250 empty pills capsules remaining.  Finally, officers located a loaded firearm in the trunk of the Vehicle.  The firearm was purchased legally by the defendant and the defendant acknowledges that the firearm was his. [ECF #67].

Co-defendant Smart was arrested on July 2, 2022, since Smart took responsibility for the drugs on that day.  The next day, July 3, 2022, officers encountered the defendant again smoking marijuana on National Forest land in the same Vehicle.  The defendant's Vehicle was searched again—this time with only the defendant in it—and officers located more heroin.  The heroin, which weighed 52.53 grams, was located under the front driver's seat of the Vehicle.

## Procedural History

The defendant was arrested on July 3, 2022, and was charged by complaint the same day. [ECF #1]. The defendant and Smart were indicted on July 12, 2022.  The defendant was charged in Count 1 with conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. § 846 and in Counts 2 and 4 with distribution and possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  [ECF #13].

On November 29, 2022, the defendant waived indictment and pled guilty, pursuant to a plea agreement, to an information charging one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). [ECF # 49].

## Guidelines Calculation

In the plea agreement, the parties disagreed on the applicability of two different Guidelines.  First, it was the Government's view that the defendant was responsible for the heroin located in the Vehicle on both July 2 and July 3, for a total of 61.51 grams of heroin.  The defendant took the position that he was responsible only for the 52.53 grams of heroin located on July 3, after his co-defendant had been arrested.  Now, however, it appears that the defendant is willing to take responsibility for the heroin found on both days.  [ECF #67, p. 4].  Accordingly, pursuant to U.S.S.G. § 2D1.1(c)(10), his base offense level is 20.

The parties also disagree about whether the two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) applies. In order for this enhancement to apply, the Government "has the initial burden of proving possession of the weapon . . . by a preponderance of the evidence." *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184-85 (10th Cir. 2004).  The Tenth Circuit has held that "[t]his burden is met by establishing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Id.* at 1185 (internal quotation marks omitted).  Importantly, the Government need not show that the weapon was possessed *in connection* with the offense to meet its initial burden—only that it was possessed by the defendant. *Id*. at 1188.  If the Government meets this initial burden,

3

the burden then shifts to the defendant to establish that "it is clearly improbable that the weapon was connected with the offense." *Id* at 1185.

The defendant acknowledges that the firearm was his and does not appear to dispute that he was aware that he had it in the Vehicle along with the heroin he intended to distribute. The Government therefore satisfies its initial burden of proving possession of the weapon. The defendant acknowledges that, after the home invasion he suffered in early 2022, he began carrying the weapon for his protection and safety. Incongruently, however, he also argues that he did not believe that he would need it for safety at the Rainbow Gathering. He claims instead he brought it to protect himself from wildlife. However, the Rainbow Gathering was so busy and so crowded, it is unlikely the defendant was going to encounter the type of wildlife that would need to be fended off with a firearm.

Given that the defendant possessed the firearm along with distribution-quantities of drugs—including, apparently, when re-supplied between July 2 and July 3 to obtain the second, 52-gram supply of heroin—it is the Government's view that this Court cannot find that the defendant has met his burden to show that it is *clearly improbable* that the firearm was connected with the offense. Instead, it is much more likely that the defendant, who had gotten into the habit of carrying a gun for safety, was similarly carrying the gun for safety as he drove across the country and at the Rainbow Gathering, given the amount of heroin that was also in the vehicle.

With the application of the two-level U.S.S.G. § 2D1.1(b)(1) enhancement, the defendant's total offense level is 19 and his Guidelines range is 30-37 months' imprisonment.

**Application of the 18 U.S.C. § 3553(a) Factors and
Opposition to Motion for Downward Variance**

The Government opposes the defendant's motion for a downward variance and asks the Court to sentence the defendant at the bottom of his Guidelines range to a sentence of 30 months' imprisonment.

A. *Nature and Circumstances of the Offense*

There can be no question that the offense here was serious. The defendant and his friend drove to Colorado to sell drugs at the Rainbow Gathering. Although the drugs turned out to be heroin, it appears that the defendant and his co-defendant believed they were fentanyl. Any opioid, however, can be deadly, and it is clear that the defendant was unconcerned about the consequences that might befall anyone who consumed his drugs. This is particularly true given the event at which the defendant intended to sell the heroin. Had a Rainbow Gathering participant overdosed in the Routt National Forest, it may have been very difficult for them to get life-saving medical attention.

The defendant contends that he and his co-defendant intended to share the drugs between only themselves and not distribute the drugs to others. While this may plausible as to the nearly nine grams of heroin seized on July 2, it does not explain the 52.5 grams of heroin seized from the defendant on July 3, after his co-defendant had already been arrested. As an initial matter, a total of 61 grams of heroin is an enormous amount of heroin and, in Colorado, would cost up to $2,000 to purchase from a steady supplier. A typical dose of heroin is less than a gram, so 61 grams would have lasted the defendant and his friend for many weeks. Even for professed regular users like the defendant and his co-defendant, therefore, it would have been impossible for them to

5

use 61 grams of heroin during the weekend-long Rainbow Gathering. And if they had tried, they would be dead. It is much more likely that the defendant and his co-defendant intended to sell some of this heroin to others in the Routt National Forest that weekend.

In addition, the defendant's explanation also ignores the bag containing hundreds of empty pill capsules that was found in the vehicle. Since heroin is typically smoked or injected, the most likely expiation for the pill capsules, which typically hold around ½ gram of powder, is that the defendant and Smart used them to scoop, measure, and sell individual doses of heroin to others in a small, portable container.

Further, to the extent the defendant intended to share the heroin only with Tory Smart, it does not explain why he was caught on July 3 with 52 grams of heroin under his driver's seat, after Smart had been arrested. Instead, the much more likely explanation is that after the defendant's nine grams of heroin was seized on July 2, the defendant resupplied—either from a supplier or from his stash—in order to have stock to sell to others. There is absolutely no other reason that the defendant would have been driving around the Rainbow Gathering with 52 additional grams of heroin in his car.

Accordingly, while this offense would be serious even if the heroin was intended to be distributed only between the defendant and Smart, the Court should reject that argument. Instead, it is much more plausible that the defendant intended to use some of the heroin but sell portions of it to others at the Rainbow Gathering. Given this, a sentence of probation would be wildly inappropriate in this case.

B. *History and Characteristics of the Defendant*

The defendant argues that his minimal criminal history and longstanding struggle with addiction warrant extreme leniency in this case. The Government does not disagree that some leniency is warranted—and has factored those characteristics into its recommendation for a sentence at the low end of the Guidelines range, despite the very serious conduct in this case.

Unfortunately, many street-level drug dealers are also addicted to their own product. This does not—and should not—excuse them from the consequences of their actions when they are caught with distribution-quantities of drugs and a firearm. The defendant argues that he is more of a danger to himself than he is to anyone else. [ECF #67 at 5]. The Government certainly agrees that the defendant's history of drug abuse makes him a danger to himself, but his distribution of the drugs at a place as remote as the Routt National Forest certainly made him a danger to others as well.

The Government does not doubt that the experience of being a defendant in federal court has been horrific for the defendant, who has never faced a lengthy sentence of incarceration before. However, simply because this defendant has a lot to lose because he been able to maintain a relatively stable and productive life throughout his addiction does not mean that he should get a pass on this offense. A sentence of 30 months' incarceration is warranted here.

C. *The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)*

The requested sentence will also reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide deterrence to criminal conduct. The defendant claims that he has been deterred. While only time will

tell whether that is true, general deterrence is also a valid purpose of sentencing, and a lengthy sentence of incarceration will signal to others—even others who may be addicted to drugs—that the appropriate course is to seek treatment for addiction, not share the addictive substance with others.

      Finally, while the defendant's co-defendant, Tory Smart, was sentenced to 24 months' imprisonment despite his more serious criminal history, Smart was held responsible only for the nine grams of heroin located on July 2 and was also not responsible for the defendant's firearm.  Instead of learning from Smart's mistake on July 2 and deciding that selling heroin at the Rainbow Gathering was perhaps a poor decision, the defendant instead elected to re-supply with over five times as much heroin as the day before and venture back out into the forest.  Accordingly, this defendant's conduct was more serious that Smart's, and a sentence of 30 months' imprisonment reflets that disparity in conduct.

**Conclusion**

The Government respectfully requests that the Court sentence the defendant to 30 months' imprisonment to be followed by three years of supervised release.

Respectfully submitted this 9th day of February, 2023.

                COLE FINEGAN
                United States Attorney

By:    *s/ Andrea Surratt*
       Andrea Surratt
       Assistant United States Attorney
       U.S. Attorney's Office
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone: (303) 454-0100
       e-mail: Andrea.Surratt@usdoj.gov
       Attorney for the Government